David Stebbins (pro se Plaintiff)      123 W. Ridge Ave., APT D, Harrison, AR 72601
(870) 212-4947         acerthorn@yahoo.com

UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF CALIFORNIA

DAVID STEBBINS,                                                                                      PLAINTIFF

VS.                                           Case 3:24-cv-00398-LJC

THIAGO CHAGAS GARCIA BAZ                                                          DEFENDANTS

## MOTION FOR HEARING REGARDING DKT 10

Comes now, *pro se* Plaintiff David Stebbins, who hereby submits the following Motion for a Hearing in the above-styled action in regards to Dkt. 10.

1. In that text-only order, the Court notified me that it would "issue a separate order in due course addressing Plaintiff's Application to Proceed in Forma Pauperis and related issues."

2. For what it is worth, I think I know what the Court is planning, and I ask that I be given my day in court to clear my name.

3. The Court most likely finds it suspicious that I claim to be indigent, yet I am somehow able to afford to (A) pay an international composer to compose songs for me, (B) pay a lawyer to draft a contract transferring the copyright to me, and (C) pay the registration fees to register all these copyrights. What's next? Do I claim poverty while driving a Lamborghini?

4. I know this is what the Court is likely thinking because I have been getting harassed online for this alleged lie. They think they've caught in a huge lie when they really haven't.

5. The truth is that these expenses were not as expensive as they sound at first glance. In fact, they were effectively free to me.

6. I only paid the composer $50 to compose all ten songs for me. That's $5 per song. See **Exhibit A** and **Exhibit B** as proof that this is what I paid the composer.

7. Meanwhile, when I hired the lawyer to draft the contract transferring copyright ownership to me, I only paid $30 for that service. See **Exhibit C** to prove that.

8. That's $80 in total (or $90.41 once all of Fiverr's "middle man" fees are also considered), not the several hundred (if not several thousand) dollars you were probably imagining when you

were thinking the thoughts described in ¶ 3 above.

9. And for what it's worth, I did not pay those expenses in cash. I paid for them using Fiverr credit. This is what I meant earlier when I said it was "effectively free to me." I had over approximately $105 in Fiverr credit that I had left over from a previous job back in 2021 that got canceled. See **Exhibit D**. The money I paid was refunded to me, but only Fiverr credit, rather than case. That credit could not be spent anywhere else except on the Fiverr website, and it certainly cannot be used to pay a federal district court filing fee any more so than the value of an Amazon gift card could.

10. As you can see from the upper right corner of these exhibits, my current Fiverr balance is $15.09, which is precisely the amount shown in Exhibit D, minus the prices I paid in Exhibits A-C. This perfectly corroborates my claim that I paid for these composer & lawyer services using the leftover credit I had from the canceled job.

11. This means that the registration fee with the US Copyright Office is the only relevant expense I have endured that was paid for with currency that could have conceivably gone towards paying a $400 federal district court filing fee. For what it's worth, that filing fee was only $85 because I registered 10 unpublished[1] works. That, however, is still far, far less than the $400 I would have to pay for a federal district court filing fee, so the fact that I endured that expense does not justify revoking my IFP status.

12. In the instant case, I have also registered additional copyrights that are at stake in the action. However, even that is not enough to revoke my in forma pauperis status. To prove this, please see **Exhibit E**, a list of all my copyright registrations for 2023 and 2024. As the Court can clearly see, I have opened several registrations, mostly to play around and see how the registration process works, but I didn't actually submit registration fees for most of them because I was never actually trying to register any copyrights. As the Court can clearly see from this screenshot, I only actually paid the registration fees for a grand total of five applications for the years of 2023 and 2024.

13. Not only that, but I was able to save tremendous amounts of money filing these

---

1  Even if the Court rules against me on the arguments contained in ¶¶ 39-43 of the First Amended Complaint, the songs were still unpublished at the time I registered them.

registrations by exploiting the fact that the videos are all technically unpublished for reasons I explained in ¶¶ 39-43 of the First Amended Complaint. This enabled me to register 20 different videos with only 2 registration fees in the year 2024.

14. Even if the Court ultimately disagrees with me on whether the videos all count as unpublished, that alone will not invalidate any of my current registrations. As long as I sincerely believe that I am telling the truth when I claim these videos are all unpublished, the registrations are still valid. Even mistakes of law (e.g. being mistaken as to what counts as publication as a matter of law) are still excusable as long as the mistake is an honest one. See Unicolors, Inc. v. H&M Hennes & Mauritz, LP, 142 S. Ct. 941 (2022). So even if the Court wishes to admonish the fact that I declared these videos unpublished when they weren't in order to group multiple registrations together, that would only impose a duty on me moving forward to take that into consideration in future registrations, but it would not affect my rights in this case.

15. Note that this is the only time I submitted two separate copyright registration applications in two back-to-back months. I bit the bullet and paid the back-to-back registration fees on back to back months because I genuinely felt it was worth it this one time. If I did not reasonably believe that I was eligible to list these videos as unpublished, I likely would have waited a few months and renewed my savings before paying for another registration fee.

16. So as the Court can clearly see, the fact that I endured these expenses is not, in fact, the red flag that so many online trolls consider it to be. I am indeed still indigent despite willfully enduring these expenses. That does not mean the Court should revoke my in forma pauperis status.

17. So unless the Court had something else entirely on its mind when it said it would "will issue a separate order in due course addressing Plaintiff's Application to Proceed in Forma Pauperis and related issues," then I humbly ask the Court to discharge that portion of its order. Please do so quickly so I can have peace of mind.

18. If, however, the Court was actually thinking of something else when it said that, then by all means, please tell me exactly what the Court is concerned about, so I can hopefully address those concerns just as thoroughly as I addressed these ones.

19.     Wherefore, premises considered, I respectfully pray that my Application for Leave to Proceed In Forma Pauperis be granted. So requested on this, the 11th day of April, 2024.

*/s/ David Stebbins*
David Stebbins (pro se)
