David Stebbins (pro se Plaintiff) 123 W. Ridge Ave., APT D, Harrison, AR 72601
(870) 212-4947 acerthorn@yahoo.com

UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF CALIFORNIA

DAVID STEBBINS, PLAINTIFF

VS. Case 3:24-cv-00398-LJC

THIAGO CHAGAS GARCIA BAZ DEFENDANTS

**RESPONSE TO (DKT 13) ORDER TO SHOW CAUSE**

Comes now, *pro se* Plaintiff David Stebbins, who hereby submits the following Response to Dkt. 13, the Court's Order to Show Cause why the Libel and DMCA Misrepresentation claims in my First Amended Complaint (FAC) should not be stricken or dismissed.

**The claims were indeed submitted to a duty judge, specifically in the original complaint.**

1. The Court is incorrect when it says that my libel and misrepresentation claims were not submitted to a duty judge. In fact, I'm honestly flabbergasted how the Court even came to that conclusion.

2. The libel and misrepresentation claims were indeed presented to the duty judge in the original complaint. See Dkt. 1, ¶¶ 62-77, ¶¶ 109-121, ¶¶ 127-128, and ¶¶ 133-136. The duty judge even acknowledged these claims, and struck them, although he gave no explanation for this action. See Dkt. 3 ("The claims for libel and DMCA misrepresentation may not proceed and will be struck from the complaint").

3. So where exactly does this Court get the idea that I didn't submit them to the duty judge? Perhaps a revised Order to Show Cause would be prudent in order to clarify the Court's position. Then I can issue a revised response to that. I already have a "Motion ... in the Alternative to Clarify" pending in this case (see Dkt. 14), so perhaps the Court could grant the requested clarification and issue a revised order to show cause at the same time.

4. When I filed the FAC, of course I kept the libel and misrepresentation claims in, but that was only so I could preserve my right to appeal those strikings. See Forsyth v. Humana, Inc., 114 F. 3d 1467, 1474 (9th Cir. 1997) ("It is the law of this circuit that a plaintiff waives all claims

alleged in a dismissed complaint which are not realleged in an amended complaint”). For this reason, I respectfully decline to do the first of the Court's two suggested courses of action[1], as that would cause me to lose my right to appeal the striking of those claims.

5. In fact, there are subtle hints in the FAC that these two claims were merely carried over. For example, in ¶ 100 of the FAC, I make a reference to ¶ 67 of that same document, even though ¶67 of that document does not appear to have anything to do with what I was talking about. In the original complaint, this made sense. In the original complaint, ¶ 70 became ¶ 100 in the FAC. In the original complaint, ¶ 67 became ¶ 97 of the FAC, due to the inclusion of a few new counts fo copyright infringement requiring that I create 30 additional paragraphs. So when I included these two claims into the FAC in order to preserve them for appeal under the Forsythe precedent, I didn't bother to update them and their references to other paragraphs, because there was no need to. I didn't expect them to be litigated in the district court until after I had a chance to appeal them, so updating the details wasn't necessary.

6. I therefore not only ask the Court to withdraw this order to show cause, but also to publicly apologize to me for accusing me of breaking the law.

7. In light of this fact, perhaps the Court may choose to simply proceed with granting the Motion for Leave to Serve Process Via Email, and we can get this show on the road much more quickly than if the Court were to screen the libel and misrepresentation claims. However, I would certainly appreciate the opportunity to shut everyone up who has previously accused me of not respecting or understanding fair use, and to do so in a way that is legally binding, so I would very much appreciate it if this Court were willing to consider giving me my day in court on the libel claim.

**The Defendant's statement is one of fact, or at the very least a mixed statement of fact and opinion.**

8. The Court has cited the issue that the Defendant's statement may be a “pure opinion” as “one facially apparent potential defect that can be addressed efficiently” as part of this response.

9. Put simply, the Defendant's accusation against me constitutes an actionable statement of

1 Dkt. 13, Page 3, Lines 17-18 (“Stebbins is ORDERED to file either: (1) a second amended complaint that is limited to the copyright infringement claims that Judge Pitts allowed to proceed”

fact because it is a mixed statement of fact and opinion. California does not call it the "mixed statement rule," but nearly every other state does, and California still has the doctrine in the first instance, so it is mostly a semantic difference, similar to how Louisiana has perishes in stead of counties, but they're still the same thing as countries. Therefore, I will simply call it the "mixed statement rule" for purposes of this response, since that's what I'm used to calling it.

10. The very case law that this court cites in support of its finding – Summit Bank v. Rogers, 206 Cal. App. 4th 669, 696 (2012)[2] – makes reference to the rule that every other state refers to as the mixed statement rule. That case law held that, while "statements of opinion are constitutionally protected ... That does not mean that statements of opinion enjoy blanket protection. On the contrary, where an expression of opinion ***implies a false assertion of fact***, the opinion can constitute actionable defamation" (emphasis added).

11. For example, in the New York case of Sallustio v R. Kessler & Assoc., Inc., 155 A.D.3d 1510, 1511 (2017)[3], the NY Court of Appeals found that the Defendant's counter-claim "is a mixed statement of opinion and fact ... The answer thus sufficiently states a counterclaim for defamation" when the plaintiffs, prior to suing the defendants for breach of contract for failing to finish constructing their home, posted a sign on their front yard saying "R. Kessler screwed us. Beware." Whether or not what-ever the construction firm did amounted to "screwing" may indeed be an ultimately subjective determination (and, therefore, a statement of opinion), but the sign heavily implied that the construction firm had engaged in some kind of objectively shady business practices. Exactly what they did is never disclosed in that sign, but the implication is that, if passers-by knew exactly what they did, there was a 99% chance they would agree that it amounted to "screwing." Those shady business practices, while not explicitly stated, are still accusations of objective fact that are still "implied" in the otherwise opinionated sign.

12. Applying that logic to the instant case, the Defendant's statement that I "seem[] to have erroneously assumed that it wasn't fair use simply because I used his content on my videos" constitutes a mixed statement (or whatever you call it in California) because he implies that he bases this evaluation of my beliefs based on my over actions and statements. Those overt actions

---

2 which this Court cited as controlling in Dkt. 13, Page 3, Lines 3-4

3 which the Court can read for free by going to scholar.google.com/scholar_case?case=13729876018106022164

and statements are just as unspecified as the shady business dealings of the New York construction firm mentioned above, but they are also just as implied as those shady business dealings.

<u>Juxtapose my accusations against him over the same topic.</u>

13. If it helps the Court understand, compare it to a similar accusation I made against the Defendant multiple times throughout the FAC. On multiple occasions, I accused the Defendant and others like him of believing that fair use requires nothing more than a token amount of criticism, and that was all it took to have a 100% chance of the secondary video being declared fair use, even if he used 100% of the original video, even if his criticism was the very definition of "threadbare," even if his secondary video completely usurps the market for the original. Literally no matter what, nonzero criticism = automatic fair use, period, full stop.

14. In both cases, we are each accusing the other of holding opposite, but equally extreme and equally absurd views of how fair use works. Therefore, I see no good reason why they should be treated differently as far as potential defamation is concerned. There is no good reason why one should be treated as an actionable mixed statement, but the other should be regarded as a non-actionable opinion. Either both are one, or both are the other.

15. However, my accusation against him is not simply my opinion. I based that determination off of his objective actions (namely the format he typically uses whenever he makes response videos), as well as his own statements directly affirming this belief.

16. For example, in a private email conversation. he outright declared that his videos about me are "still fair use you dickhead" simply because "There was creative spark and it was transformative." See **Exhibit A**. That's it. That's all he offered in support of his claim that it was fair use. He made it abundantly clear that he genuinely feels that's all he needs. Even in his DMCA Counter-Notification, he never made any attempt to argue fair use beyond "creative spark" and "criticism." See **Exhibit B**. I'm not just pulling this accusation out of my backside. I'm accusing him of holding the belief that ***he admitted in writing to holding!***

17. Meanwhile, I have made multiple attempts to explain to my haters how fair use actually works, including two multi-hour-long videos (one of which was directed towards him specifically), which the Court can see by going to these URLs:

  (a)  https://www.youtube.com/watch?v=e5r46D2IQKI

  (b)  https://www.youtube.com/watch?v=G1TWOuUehzY

18. Baz almost certainly saw both of those videos before he submitted his libelous DMCA Counter-Notification. In both of those videos, I do not simply repeatedly declare "it's still not fair use you dickhead." Instead, I give a systematic explanation as to why my haters' videos do not qualify for fair use, systematically analyzing all four factors and nearly every sub-factor. All throughout both videos, I make multiple references to case law and various other legally binding authorities to back up my claims. As I repeatedly say in the first of those two videos, "Says who? Says the Supreme <expletive> Court! How's that for an authoritative source?!"

19. The Defendant, despite being fully aware of all the facts and law that I provide across both of those videos, chooses to completely ignore all of it, and instead stubbornly insist that all of his videos about me are "still fair use you dickhead" simply because he says so.

20. These are the kinds of statements of objective fact that are "implied" when I make the accusations mentioned in ¶ 13 above: Both the written confession mentioned in ¶ 16 and the burying of his head in the sand described in ¶ 19. Both of those are cast-iron objective facts, and were those two facts provably false, I'd well be just as guilty of libel as I'm accusing Baz of now.

21. Likewise, when Baz makes the equivalent, opposite arguments against me, he is likewise implying that I either stated at one point that his videos weren't fair use "simply because [he] used [my] content on [his] videos," or that I was repeatedly confronted with irrefutable proof, backed by legal citations, that fair use does indeed require nothing more than a nonzero amount of token criticism to the exclusion of all other factors, and I proceeded to simply ignore all of that irrefutable proof and proceed to issue DMCA takedowns against anything and everything regardless of fair use.

22. Those implications mentioned in that last paragraph are all objective facts. I either did those things or I didn't. There is no room for personal interpretation. The multitude of times when people tried to explain their definition of fair use to me were either backed by citations to legally binding authorities, or they weren't. I either simply ignored all of those irrefutable proofs, or I didn't (and no, providing rebuttal arguments backed by legal citations is not the same thing

as "simply ignoring" their arguments).

23. Baz clearly *implied* all of these things. Therefore, it is a mixed statement. Whatever California calls its version of the mixed statement rule, this is such an instance. Bear in mind that even this Court's own citation of case law affirms that this is the law in California, just without the "mixed statement" moniker, just like how Louisiana still has "counties" in everything but name.

Baz merely attaching the word "seems" does not and should not give him a free pass.

24. This Court scoffs at my supposedly arbitrary declaration that the Defendant's statement is one of fact. But ironically, it seems to give dispositive deference to the Defendant's arbitrary use of the word "seems."

25. Put simply, the Defendant should not be able to pass an otherwise factual statement off as an opinion simply by attaching weasel words like "seems" and "appears." That is just another form of letting the defendant be the judge of his own case. It would be impossible for anything to be actionable as defamation if that was all the Defendant had to do to obtain blanket immunity. Anybody can do that.

26. In no other aspect of the law is such a get-out-of-jail-free card even remotely tenable. A driver cannot get out of a speeding ticket just because he casually says the word "Emergency!" right as he gets pulled over, even when that declaration has no basis in reality. A killer certainly cannot give himself a complete defense to his crime through the simple expedient of shouting "Self defense!" right before he pulls the trigger. In nearly any other aspect of the law, the idea that a defendant can give himself a defense simply by casually using words corresponding to that defense is a ludicrous prospect on its face. So the fact that the Court is seriously entertaining that notion here is unsettling.

27. The only time the use of such words should ever be given any weight at all (let alone the kind of dispositive weight this Court wishes to give it in the instant case) is when the statement is otherwise bordering the line between fact and opinion, and even then, the Court should be weary of the possibility that the Defendant is merely attempting to use those weasel words as a crutch.

28. In support of its position, the Court cites the non-precedential case of Pishgoo v. Langroudi, No. B275280, 2018 WL 1477673, at *6 (Cal. Ct. App. Mar. 27, 2018). However, in

addition to it not even being published and therefore not precedential, the case is so distinguishable from the instant case that the difference is night and day. In that case, defendant Langroudi's statement was "not sure who is giving you advise, it seems like they wanted to sabotage your deal." See id at 14. In other words, by Langroudi's own admission, he was basing his opinion on a *lack* of information, not a wealth of it. By his own admission, he did not know anything about the identity or background of Motlagh's advisor. His determination was solely "based on the manner in which Motlagh communicated with him," (id at 15) nothing more nothing less.

29.     A similar incident happened a couple years ago that made national headlines. In the case of Alex Jones and his defamatory statements regarding the Sandy Hook school shooting, many liberal pundits following the case speculated that Jones' lawyers were actively trying to screw him. This speculation, however, was not simply pulled out of thin air, nor was it made in the face of overwhelming evidence that his lawyers were indeed acting in good faith and giving it their all to clear their client's name. Rather, the speculation was based on the fact that Jones' lawyers were engaging in genuinely imbecilic conduct that most lawyers don't do unless they're trying to sabotage their clients, not the least of which was handing over hundreds of pages of text message records which plainly document Jones' culpability in spreading the defamation, and what's even worse, they didn't even try to take the records back even after the plaintiffs' lawyers repeatedly notified them that this was in excess of the discovery requests and they could take them back if they wanted!

30.     In these two cases, the speculation that someone is attempting to sabotage the client they are supposed to be advising and advocating for can be considered an opinion (and therefore not actionable as defamation), because one is reasonably based on objective actions the subjects are taking that is objectively consistent with the speculation, whereas with Pishgoo, the defendant was so starved for tangible information that he was basically reduced to making a wild guess.

31.     Neither of those mitigating factors are present here. In the instant case, Baz's statement that I believed his videos about me are not fair use "simply because [he] used [my] content on [his] videos" is not based on a dearth of evidence, but rather, is said *in spite of an abundance of evidence to the contrary*. This is literally the complete opposite of the circumstances in Pishgoo.

If, as here, Langroudi had genuinely been privy to evidence that undermined his assumption that Pishgoo was seeking to sabotage Motlagh, then yes, he would indeed have been required, under the common law doctrine of the "Reasonable Person," to consider that evidence and adjust his assessment accordingly. Baz's failure to do that in this case, when the totality of the circumstances warranted it, is what makes his statement defamatory whereas Langroudi's statement was not.

32. Combine that with the fact that, by this Court's own admsision, Pishgoo isn't even precedential, and that case quickly becomes entirely inapposite to the instant case.

**Conclusion**

33. I have done exactly what this Court asked of me. I have addressed all the concerns laid out in the order to show cause. I did not fail to submit the libel and misrepresentation claims to the duty judge; he already addressed them. I simply kept them in the FAC so I could preserve those strikings for appeal. In addition, the Defendant should not be eligible for a "pure opinion" defense to libel because his statements are mixed. His use of the word "seems" does not turn his factual and/or mixed statements into opinions.

34. Wherefore, premises considered, I respectfully pray that the Court terminate its show-cause order and allow the case to proceed, with or without reinstating the already-stricken libel and misrepresentation claims.

So requested on this, the 4th day of May, 2024.

*/s/ David Stebbins*
David Stebbins (pro se)