UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID A. STEBBINS,<br><br>Plaintiff,<br><br>v.<br><br>THIAGO CHAGAS GARCIA BAZ,<br><br>Defendant. | Case No.  24-cv-00398-LJC<br><br>**REPORT AND RECOMMENDATION REGARDING MOTION FOR DEFAULT JUDGMENT**<br><br>**ORDER TO REASSIGN CASE**<br><br>Re: Dkt. No. 37 |

## I.    INTRODUCTION

Plaintiff David Stebbins, who uses the alias "Acerthorn" for videos he posts to YouTube, brings this action against Defendant Thiago Chagas Garcia Baz.  The case concerns Baz's copying of Stebbins's YouTube videos (as well as songs contained therein and an image associated with Stebbins's account) in response videos that Baz posted to YouTube, before YouTube removed the videos and suspended Baz's account for copyright violations.  Stebbins is proceeding pro se, and Baz (who lives in Brazil) has not appeared.  The undersigned previously authorized the Clerk to enter Baz's default after Stebbins initiated the process for service under the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents and the Brazilian Ministry of Justice did not provide proof of service within the time allowed under that treaty.  Stebbins has also notified Baz of this case by email and postal mail, and he has provided evidence that Baz is aware of the case.

Stebbins is a frequent and vexatious litigant, whose multitudinous filings—mostly related to YouTube videos—have been criticized (and usually dismissed) by judges throughout the country.  *See, e.g.*, *Stebbins v. Moon*, No. 2:24-cv-140, 2025 WL 312524, at *3–4 (S.D.W. Va. Jan. 27, 2025) (identifying fifty cases that Stebbins has filed in various district courts, and noting Stebbins's assertion that he has "never won a case").

1     For the reasons discussed below, the undersigned finds that Baz infringed Stebbins's

2   copyright as to most of the works at issue, but that most such infringement cannot support

3   statutory damages because Stebbins had not registered copyright to the works at issue before Baz

4   infringed them.  The undersigned recommends that the Court GRANT default judgment in the

5   amount of $1,500 as statutory damages for infringement of one video that included songs for

6   which Stebbins had previously registered copyright.  The undersigned recommends that Stebbins's

7   Motion for Default Judgment otherwise be DENIED.

8     Because not all parties have appeared and consented to the jurisdiction of magistrate judge

9   under 28 U.S.C. § 636(c), the Clerk is directed to reassign this case to a district judge for all

10  further proceedings.  Stebbins is directed to serve a copy of this Report on Baz by email and postal

11  mail, and to file proof of service no later than February 26, 2026.  Any party may file objections to

12  the recommendations herein no later than two weeks after being served with a copy of this Report.

13  *See* 28 U.S.C. § 636(b)(1).

14  **II.     BACKGROUND**

15      **A.     Procedural History**

16      Stebbins has been declared a vexatious litigant in this district, with a requirement to submit

17  any copyright-related claims (or claims against Google) for pre-filing review by the duty judge.

18  *Stebbins v. Google LLC*, No. 23-cv-00322-TLT, 2023 WL 6139454, at *11 (N.D. Cal. Aug. 31,

19  2023), *appeal docketed*, No. 24-1936 (9th Cir. Apr. 1, 2024).  As far as the undersigned is aware,

20  Stebbins has not previously sued Defendant Baz.  When Stebbins filed this action, the Honorable

21  Casey Pitts (serving as duty judge) allowed "the proposed complaint to proceed only as to the

22  claims for copyright infringement," but struck "claims for libel and DMCA misrepresentation."

23  ECF No. 3.

24      The case was assigned to the undersigned magistrate judge, and Stebbins filed an

25  Amended Complaint (ECF No. 8) reasserting the claims that Judge Pitts had stricken from his

26  original Complaint.  The undersigned granted Stebbins's application to proceed in forma pauperis

27  and ordered Stebbins to show cause why those claims should not be stricken or dismissed.  ECF

28

United States District Court
Northern District of California

No. 13.[1]  Stebbins responded that he had reasserted the claims to preserve a right to appeal.  ECF No. 15 at 1.  The undersigned issued a report and recommendation to dismiss or strike those claims again.  ECF No. 16.[2]  The undersigned did not recommend dismissing or striking the copyright infringement claims that Judge Pitts had allowed to proceed.  *Id.* at 5.  The Honorable Vince Chhabria, then serving as duty judge, adopted that recommendation.  ECF No. 19.

The undersigned denied Stebbins's motion to serve Baz by email, holding that the Hague Convention preempted inconsistent methods of service and did not allow for service by email, and that no exception to the Hague Convention applied.  ECF No. 20.[3]  At a July 18, 204 case management conference, the undersigned approved Stebbins's plan to pursue service under the Hague Convention.  ECF No. 22.  Stebbins submitted documents to the Clerk's Office in English and Portuguese, and the Clerk transmitted them to the Brazilian Ministry of Justice on July 22, 2024.  ECF Nos. 24, 28.

Stebbins moved for entry of default on January 19, 2025.  ECF No. 29.  The undersigned denied that motion because the typical time of the Brazilian Ministry of Justice to effect service under the Hague Convention (six to eight months) had not yet elapsed, without prejudice to Stebbins renewing his request after that time had passed.  ECF No. 30.  The undersigned denied Stebbins's motion for reconsideration or leave to file an interlocutory appeal of that Order.  ECF No. 32.[4]

In compliance with the undersigned's Order, Stebbins filed another motion for entry of default on April 22, 2025.  ECF No. 33.  The undersigned granted that motion and directed the Clerk to enter Baz's default, finding that Article 15 of the Hague Convention authorized entry of default when the Brazilian Ministry of Justice had not provided a "certificate of any kind" nine months after transmission of appropriate documents.  ECF No. 34.  The Clerk entered Baz's default on April 24, 2025.  ECF No. 35.  Stebbins filed his present Motion for Default Judgment

---

[1] *Stebbins v. Garcia Baz*, No. 24-cv-00398-LJC, 2024 WL 3379662 (N.D. Cal. May 2, 2024).
[2] *Stebbins v. Garcia Baz*, No. 24-cv-00398-LJC, 2024 WL 3379667, (N.D. Cal. May 21, 2024), *recommendation adopted*, 2024 WL 3379661 (N.D. Cal. June 7, 2024).
[3] *Stebbins v. Garcia Baz*, No. 24-cv-00398-LJC, 2024 WL 3447507 (N.D. Cal. July 16, 2024).
[4] *Stebbins v. Garcia Baz*, No. 24-cv-00398-LJC, 2025 WL 296140 (N.D. Cal. Jan. 24, 2025).

United States District Court
Northern District of California

1    on May 22, 2025.  ECF No. 37.  At the direction of the undersigned, he later filed copies of the

2    multimedia files at issue in accordance with the Clerk's Office's procedures for filing such

3    material electronically.  *See* ECF Nos. 39–46.

### B.    Allegations of the Complaint and Evidence in the Record

Stebbins alleges that Baz infringed Stebbins's copyright to ten videos, ten songs, and one

graphic icon.  This Report addresses the videos at issue in the same order as in Stebbins's First

Amended Complaint, which sometimes differs from chronological order.  Because a plaintiff's

factual allegations (except as to damages) are generally taken as true in resolving a motion for

default judgment, this summary presents Stebbins's allegations as if true.  This summary omits

allegations in the First Amended Complaint that are relevant only to the claims that were stricken

by Judge Chhabria, and it is not intended as a complete recitation of all relevant evidence or

allegations even as to Stebbins's copyright infringement claim.

Stebbins posted a video titled "Are the Stormcloaks racist? - Elder Scrolls Discussion &

Lore Episode 1" to YouTube on June 8, 2018.  FAC ¶¶ 8–9.  Stebbins references this video as the

"First Racist Video," and though that is something of a misnomer—the undersigned does not

understand Stebbins to be suggesting that his own video is racist—this Report uses his

terminology for the videos at issue.  This is a 27:48 video[5] in which Stebbins argues that the

Stormcloaks, a fictional group in the Elder Scrolls V: Skyrim video game, are not (collectively)

racist.[6]  As is common for Stebbins's videos at issue, it consists largely of recorded gameplay

from a video game, with Stebbins speaking over it and music playing in the background.  The

video is occasionally overlaid with other images or text.

In response, Baz published a three-part video series titled "Acerthorn's 'Are the

Stormcloaks Racist' DEBUNKED" on March 4, March 31, and April 20, 2019, which Stebbins

---

[5] In this Report, times expressed as two numbers separated by a colon indicate minutes and seconds.

[6] Stebbins filed all of the videos at issue electronically through a Box.com system configured by the Clerk for that purpose.  *See* ECF No. 43.  Because the videos themselves are not filed on PACER, this Report does not cite them by docket number.  The videos are saved in the Clerk's records under file names corresponding to the names Stebbins uses to reference them.  Uncited descriptions of the videos' contents are based on the undersigned's review of those files.

United States District Court
Northern District of California

United States District Court
Northern District of California

references collectively as the "First Racist Response." FAC ¶¶ 53–54. The first of those videos starts with a short segment from the beginning of Stebbins's video. After a brief clip of the actor J.K. Simmons laughing (from the 2004 film Spider-Man 2), it then consists of footage of a video game (presumably played by Baz), with audio of Baz explaining that he feels the need to address Stebbins's video because he disapproves of how Stebbins responded to someone else's criticism. Then, from 2:30 into Baz's video to 3:38 into the video, it excerpts the next portion of Stebbins's video: the same video footage of Stebbins playing a game, the same audio of Stebbins arguing that the Stormcloaks are not racist, the same music playing in the background, and the same meme (an image of Donald Trump with white text) briefly overlaid on the screen. After a short clip from the television show Futurama, the video continues—and ends—with more than seventeen minutes of clips of gameplay while Baz discusses his views on Stebbins's video and the fictional world of the Skyrim game. Baz's second video in the series again begins with a copy of a roughly 1:26 portion of Stebbins's video, picking up where the first video left off before it turned to Baz's commentary. Baz spends around a minute responding (over footage of his own gameplay), and then returns to the next segment of Stebbins's video. It continues in that vein for the remainder of its 19:29 duration, alternating between Stebbins's video and Baz's commentary, with the exception of another very short excerpt from Futurama. The third and final installment of Baz's response, which runs for 27:07, is similarly composed of segments of Stebbins's video and Baz's commentary. Taken together, the three videos include at least substantially all of Stebbins's original video.

Stebbins posted his second video at issue on January 12, 2020, titled "Why You Should Side With the Stormcloaks - Elder Scrolls Lore Discussion" and referenced in this action as the "First Stormcloaks Video."[7] FAC ¶ 10. That video runs for 20:12 and consists of Stebbins arguing (over gameplay footage and background music) that Skyrim players should support the Stormcloaks. Baz again published a multi-part video response later the same month, titled "'Why

---

[7] Again, one might question Stebbins's chosen nomenclature, when the previous video also focused on the Stormcloaks. For consistency, however, this Report uses the same terminology as Stebbins's filings.

You Should Side With the Stormcloaks' DEBUNKED," and referenced by Stebbins as the "First Stormcloaks Response." *Id.* ¶ 60.  Baz's videos again included substantially all of Stebbins's original video, broken out into segments and interspersed with Baz's commentary (and occasional clips of gameplay and snippets from popular media).  Much of Baz's commentary occurs in conjunction with a looped computer-generated video of a person in armor superimposed over a paused image from the game or from Stebbins's video.  Stebbins did not save a copy of the fourth and final installment of this series, but Baz makes clear in his commentary that he is systematically addressing most if not all of Stebbins's video—for example, beginning the third video by stating, "Alright boys, it's time debunk another five minutes of Acerthorn's video"—and the three installments that Stebbins filed in evidence include a substantial portion of Stebbins's video.  This Report takes as true Stebbins's allegation that the "First Stormcloaks Response" "copied literally 100% of the First Stormcloaks Video."  FAC ¶ 62.

The "Ducking Video" (fully titled "Maybe YOU'RE the ones ducking ME!") is a 22:27 video, posted on May 16, 2022, in which Stebbins discusses his frustration with other YouTube users, a previous criminal case against him, and copyright law, over footage of Stebbins playing a Call of Duty first-person shooter video game.  *See* FAC ¶ 14.  The 5:27 "Aaron Video" (fully titled "Aaron Admits Atrocious Actions are Caused by Creation of Critical Content") is similar, focusing on a comment by a particular user.  *See* FAC ¶ 16.  Baz's response, titled "No, Acerthorn, You are NOT the Victim" and referenced in this action as the "Victim Video," *id.* ¶ 73, runs for nearly an hour.  It includes segments of commentary and criticism over computer-generated video of Baz's armored avatar, as well as long as segments of Stebbins's "Ducking Video" and "Aaron Video."  This Report takes as true Stebbins's allegation that Baz "play[s] the entirety of both videos, literally every last second of them."  FAC ¶ 74.

Beginning in July of 2019, Stebbins posted a series of short videos called "Retorting Against Mean Comments."  FAC ¶ 18.  Four of those videos are at issue in this case: the April 1, 2021 "Incest Video"[8] where Stebbins accuses a negative commenter of being a product of incest;

---

[8] Titled on YouTube: "Retorting Against Mean Comments - 'Rumor Has It' #Shorts."

United States District Court
Northern District of California

the August 16, 2021 "Fractions Video"[9] where Stebbins disputes the literal accuracy of a comment asserting that "not a single thing" in another video is correct; the August 18, 2021 "Trauma Video"[10] where Stebbins speculates that a negative commenter experienced childhood trauma; and the March 6, 2022 "Nirvgorilla Video,"[11] which seems to be part of an ongoing feud with another YouTube user. *See* FAC ¶ 20. Each of those "YouTube Shorts" videos is less than one minute long. In Baz's roughly twenty-minute-long April 3, 2022 "Censorship Video,"[12] Baz described Stebbins's series as "cringeworthy" and played complete copies of those four videos in succession, followed by the comment, "Yeah, those don't even need further comment." *See* FAC ¶¶ 84–87.

On October 17, 2020, Stebbins posted what he refers to here as the "Civility Video,"[13] FAC ¶ 21, which runs for around twenty-seven minutes and consists of Stebbins sharing his views on topics like civil debate, author J.K. Rowling's opinions on gender, and racism in video games, over a background of gameplay in various video games. This video also includes screenshots of written work and clips of other videos, including a short segment one of Baz's videos that appears from 10:44 through 11:00. Baz posted two videos in response, which Stebbins references collectively as the "Civility Response,"[14] on February 23, 2021 and March 25, 2021. FAC ¶ 63. These include some segments of commentary over video of Baz's armored virtual avatar, some screenshots of other material, and lengthy segments of Stebbins's video. As Stebbins notes in his First Amended Complaint, some of the segments of his video run longer than three minutes. FAC ¶ 65. This Report takes as true Stebbins's allegation that "100% of [his] original video is used" across Baz's two-part response. *Id.* Stebbins also asserts that the second "Civility Response" video infringes Stebbins's trademark to a YouTube channel icon image, which is included in

---

[9] Titled on YouTube: "Retorting Against Mean Comments #05 - Everything is Wrong - #Shorts."
[10] Titled on YouTube: "Retorting Against Mean Comments #06 - Childhood Trauma Resurfaces - #Shorts."
[11] Titled on YouTube: "Nirvgorilla Returns … and Is A Total Hypocrite – Retorting Against Mean Comments Pt. 7 -#Shorts."
[12] Titled on YouTube: "Acerthorn is a Disingenuous Censor and He Needs to Stop!"
[13] Titled on YouTube: "Why I Demand Civility in the Comments of my Videos."
[14] Titled on YouTube: "Everything Wrong with Acerthorn's Why I Demand Civility In the Comments of My Videos."

United States District Court
Northern District of California

1    screenshots of Stebbins's YouTube comments appearing from 25:42 through 26:07.  *See* FAC

2    ¶ 66.

3        The "Elden Ring Video"[15] is a 3:49 video that Stebbins posted on March 23, 2022, in

4    which he expresses his views on the video game Elden Ring (which he has not played, but

5    dislikes).  In the "Elden Ring Response" video, Baz spends the first approximately twenty-six

6    minutes discussing views Stebbins expressed on Twitter, and expressing Baz's own views on

7    political issues and other topics.  Stebbins does not allege that to be infringement.  Baz then

8    discusses the "Elden Ring Video," playing that video substantially in its entirely over the course of

9    several clips, interspersed with Baz's criticism of it.  This Report takes as true Stebbins's

10   allegation that Baz's "Elden Ring Response" uses "literally 100% of the original Elden Ring

11   video, every single last second of it."  FAC ¶ 71.

12       On March 25, 2023, Stebbins posted the "Second Stormcloaks Video,"[16] which runs for

13   more than two hours.  FAC ¶ 36.  Like most of his other videos, this largely consists of Stebbins

14   explaining his opinions over recorded gameplay video.[17]  *See id.* ¶ 37.  As background music, the

15   video includes ten songs that Stebbins hired a composer to create for him.  *Id.* ¶¶ 27, 28 38.  The

16   songs were works for hire such that Stebbins holds copyright, and Stebbins and the composer

17   agreed that even if they were not, the composer has sold copyright to the songs to Stebbins.  *Id.*

18   ¶¶ 30–32.  At some point later (the First Amended Complaint does not specify when), Baz posted

19   three videos addressing the "Second Stormcloaks Video," which Stebbins refers to collectively as

20   the "Second Stormcloaks Response."  *Id.* ¶ 75.  Baz made clear in those videos that he intended to

21   post a longer series covering the entirety of Stebbins's "Second Stormcloaks Video," but YouTube

22   deactivated Baz's account in response to Stebbins's reports of copyright violations before Baz

23   posted the fourth installment.  *Id.*  The three installments that he posted include substantially all of

24   the first hour or so of Stebbins's video, often played in relatively long segments, in addition to

---

[15] Titled on YouTube: "Elden Ring Sucks, and Here's Why."
[16] Titled on YouTube: "You Should Side with the Stormcloaks, and Here's Why."
[17] As one difference from the other videos at issue that is perhaps notable, though irrelevant to the outcome of the present Motion, this video ends with a shot of Stebbins himself standing up from his desk, apparently nude from the waist down, with his genitals redacted.

1    segments of Baz's commentary.  Because Stebbins's original video included Stebbins's songs,

2    Baz's videos also include those songs when playing portions of Stebbins's video.  For example,

3    Stebbins's 3:08 song "Section of Life" plays on loop through a 4:33 segment of Stebbins's video

4    that Baz copied beginning at 3:41 of the second installment of the "Second Stormcloaks

5    Response."  FAC ¶¶ 80–81.

6         YouTube removed some of Baz's videos at issue in response to complaints of copyright

7    infringement that Stebbins submitted under the Digital Millenium Copyright Act.  FAC ¶ 45.  Baz

8    removed the remaining videos after YouTube temporarily deactivated and later reinstated his

9    account.  *Id.* ¶ 45 & n.3; ECF No. 37-9 at 20 & n.5.

10   **III.    LEGAL STANDARD**

11        A court may enter default judgment on a motion by a plaintiff after the clerk has entered a

12   defendant's default.  Fed. R. Civ. P. 55(b)(2).  After considering threshold issues of jurisdiction

13   and service of process, courts consider the following factors in exercising their discretion to grant

14   or deny default judgment:

15             (1) the possibility of prejudice to the plaintiff, (2) the merits of
               plaintiff's substantive claim, (3) the sufficiency of the complaint,
16             (4) the sum of money at stake in the action, (5) the possibility of a
               dispute concerning material facts, (6) whether the default was due to
17             excusable neglect, and (7) the strong policy underlying the Federal
               Rules of Civil Procedure favoring decisions on the merits.
18

19   *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986).  Courts evaluating a motion for default

20   judgment take the factual allegations of a plaintiff's complaint as true except as to damages, which

21   must be shown by evidence.  *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir.

22   1987).

23   **IV.    ANALYSIS**

24        **A.    Jurisdiction**

25             **1.    Subject Matter Jurisdiction**

26        Federal courts have subject matter jurisdiction over "all civil actions arising under the

27   Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.  Stebbins's sole remaining

28   claim (for copyright infringement) arises under federal law, so this case falls within the Court's

United States District Court
Northern District of California

9

United States District Court
Northern District of California

subject matter jurisdiction under § 1331.

### 1.    Personal Jurisdiction

"Where, as here, there is no applicable federal statute governing personal jurisdiction, the district court applies the law of the state in which the district court sits.  Because California's long-arm jurisdictional statute is coextensive with federal due process requirements, the jurisdictional analyses under state law and federal due process are the same."  *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800–01 (9th Cir. 2004) (citations omitted).  Due process requires that a nonresident defendant "have at least 'minimum contacts' with the relevant forum such that the exercise of jurisdiction 'does not offend traditional notions of fair play and substantial justice.'"  *Id.* at 801 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).  But objections to personal jurisdiction are waivable, and a party may consent to the person jurisdiction of a particular court.  *Dow Chem. Co. v. Calderon*, 422 F.3d 827, 831 (9th Cir. 2005).

After Stebbins submitted a notification to YouTube that some of Bazs' videos purportedly infringed Stebbins's copyright, Baz submitted a counter-notification asserting that his videos were fair use and should be reinstated.  ECF No. 37-1, ¶ 5 & Ex. C (ECF No. 37-3).  The counter-notification listed an address for Baz in Brazil, and included the following attestation:

> I consent to the jurisdiction of the Federal District Court for the district in which my address is located, or if my address is outside of the United States, the judicial district in which YouTube is located, and will accept service of process from the claimant.

ECF No. 37-3 at 3; *see also id.* at 4 (repeating the same text).

Such consent is required by the Digital Millenium Copyright Act, 17 U.S.C. § 512(g)(3)(D), and is a valid consent to personal jurisdiction, *see, e.g.*, *Viral DRM LLC v. YouTube Uploaders Listed on Schedule A*, No. 3:23-cv-05594-JSC, 2024 WL 189013, at *2 (N.D. Cal. Jan. 17, 2024); *Epic Games, Inc. v. Mendes*, No. 17-cv-06223-LB, 2018 WL 2926086, at *5 (N.D. Cal. June 12, 2018).  As has been widely addressed in other cases, YouTube is located in this district.  *See, e.g.*, ECF No. 37-3 at 4 (listing an address for YouTube in San Bruno); *Epic Games*, 2018 WL 2926086, at *5.  Baz has therefore consented to personal jurisdiction in this district for the purpose of this copyright dispute.

1
2
3
4
5
6
7
8
9
10
11

12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**B.    Service of Process**

As another threshold issue, the Court must determine that service of process was proper. *Bank of the W. v. RMA Lumber Inc.*, No. C 07-06469 JSW, 2008 WL 2474650, at *2 (N.D. Cal. June 17, 2008).  Service must comply with Rule 4 of the Federal Rules of Civil Procedure, which authorizes service on an individual in a foreign country by—among other potentially applicable procedures—"any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents."  Fed. R. Civ. P. 4(f)(1).  Rule 4 also allows service "by other means not prohibited by international agreement, as the court orders."  Fed. R. Civ. P. 4(f)(3).

The undersigned previously determined that Stebbins must comply with the Hague Convention's process to submit documents to the Brazilian Ministry of Justice for service.  ECF No. 20.  Stebbins thereafter submitted all necessary documents to the Clerk, and the Clerk submitted them to the Ministry of Justice.  ECF Nos. 24, 28.  When the Ministry of Justice had not provided a certificate of service after more than nine months, the undersigned authorized entry of Baz's default in accordance with Article 15 of the Hague Convention.  ECF No. 34.  That provision allows a "Contracting State . . . to declare that the judge . . . may give judgment even if no certificate of service or delivery has been received, if" the document has been transmitted through means authorized by the Convention, at least six months has elapsed since such transmission, and "no certificate of any kind has been received" despite reasonable efforts to obtain one.  *Id.* at 1 (quoting 20 U.S.C. 361, art. 15).  The United States has so declared, so that method of obtaining default judgment was available in this case.  *Id.* at 2 (citing *Media Trademark & Licensing Ltd. v. COINGEEKLTD.COM*, No. CV-21-00214-PHX-DWL, 2021 WL 2895289, at *6 (D. Ariz. July 9, 2021).  The undersigned noted that Stebbins had previously served Baz by email and that he had offered evidence that Baz was aware of this action.  *Id.* at 3 (citing ECF No. 29, ¶ 8; ECF No. 29-3 at 6; ECF No. 33, ¶ 6, ECF No. 33-3).  The undersigned also required Stebbins to serve that Order and the entry of default on Baz by email and postal mail, *id.*, which he did on or about April 23, 2025, ECF No. 36.

The undersigned therefore concludes that service has been completed in a manner

11

consistent with Rule 4(f)(1) and the Hague Convention (including Article 15), or in the alternative, consistent with Rule 4(f)(3).

### C.    *Eitel* Factors

Most of the *Eitel* factors either weigh in favor of default judgment or are inapplicable where, as here, a defendant has failed to appear. With no other avenue apparent to resolve this case, Stebbins will be prejudiced if default judgment is not granted because he will be left without a remedy. There is no indication that Baz's default was due to excusable neglect—as discussed above, Stebbins has informed Baz of this action and submitted evidence that Baz is aware of it— nor that Baz would dispute any material facts. Notwithstanding the strong public policy favoring decisions on the merits, such a decision is not possible when Baz has failed to appear or defend and there is no indication that he intends to do so.

The factors of "'the merits of plaintiff's substantive claim' and 'the sufficiency of the complaint,' are intertwined where, as here, the case has not advanced beyond the pleading stage." *Dist. Council 16 N. Cal. Health & Welfare Tr. Fund v. Prod. Serv. & Lab., Inc.*, No. 20-cv-2063-JCS, 2022 WL 17371170, at *7 (N.D. Cal. Sept. 13, 2022), *recommendation adopted*, 2022 WL 17371142 (N.D. Cal. Oct. 25, 2022). This Report addresses those factors below.

The sum of damages sought here is extreme, and weighs against fully granting Stebbins's Motion. This Report also discusses appropriate damages below in the context of the merits of Stebbins's claims.

### D.    Merits and Sufficiency of the Complaint

The Copyright Act grants copyright owners exclusive right to copy their protected works and allows them to bring civil claims against anyone who infringes that right. 17 U.S.C. §§ 106, 501. "Proof of copyright infringement requires [a plaintiff] to show: (1) that he owns a valid copyright . . . ; and (2) that [the defendant] copied protected aspects of the work. *Skidmore ex rel. Randy Craig Wolfe Tr. v. Led Zeppelin*, 952 F.3d 1051, 1064 (9th Cir. 2020). "The second prong of the infringement analysis contains two separate components: 'copying' and 'unlawful appropriation.'" *Id.* (citation omitted). The latter component looks to whether the defendant's work has substantial similarities to protectable elements of the plaintiff's work. *Id.*

United States District Court
Northern District of California

United States District Court
Northern District of California

The videos, songs, and channel icon image at issue are all expressive works eligible for copyright protection, and Stebbins has sufficiently alleged (and thus established for the purpose of default judgment) that he owns copyright to them.  Stebbins has also established through his allegations, and through the multimedia files now in the record, that Baz reproduced each of those works either in their entirety or in substantial part in Baz's videos.  This is not a case that turns on questions of whether merely *similar* works evince copying as opposed to independent inspiration, or whether limited similarities implicate protected elements.  The undersigned has little trouble concluding that those basic elements of copyright infringement are satisfied.

Not all copying, however, is infringement.  "[T]he fair use of a copyrighted work, including such use by reproduction in copies . . . , for purposes such as criticism, comment, news reporting, teaching (including multiple copies for classroom use), scholarship, or research, is not an infringement of copyright."  17 U.S.C. § 107.  In assessing fair use, courts consider factors including:

> (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;
>
> (2) the nature of the copyrighted work;
>
> (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and
>
> (4) the effect of the use upon the potential market for or value of the copyrighted work.

*Id.*

"Since fair use is an affirmative defense, its proponent [must] carry[] the burden of demonstrating" its application to a particular case.  *See Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 590 (1994).  Fair use is generally not available to a defendant who has defaulted, because it "must be raised during litigation."  *Facebook, Inc. v. Holper*, No. 20-cv-06023-JCS, 2022 WL 17167958, at *11 (N.D. Cal. Sept. 27, 2022) (quoting *Yelp Inc. v. Catron*, 70 F. Supp. 3d 1082, 1095 (N.D. Cal. 2014)), *recommendation adopted as modified on other grounds*, 2022 WL 17169836 (N.D. Cal. Nov. 22, 2022).  That said, at least one court has denied default judgment based on a facially obvious defense of fair use, relying on the doctrine that "a court may

dismiss a case when an affirmative defense is apparent on the face of the pleadings." *Pierson v. Gamer World News Ent., Inc.*, No. CV 18-10137-CJC (KSxx), 2019 WL 8064255, at *3 (C.D. Cal. Sept. 20, 2019) (denying default judgment where a defendant briefly displayed a copyrighted image of a politician in a YouTube video "report[ing] a newsworthy development: a proposed tax on video games").

Here, it is not apparent that Baz's use of Stebbins's videos (and Stebbins's songs that Stebbins included in his "Second Stormcloaks Video") was fair use. Though Baz's videos reflect "criticism" of and "comment" on Stebbins's videos, *see* 17 U.S.C. § 107, other factors weigh against a finding of fair use. For example, "the amount and substantiality of the portion used" is high "in relation to the copyrighted work as a whole," often consisting of the entirety of Stebbins's works. *Id.* § 107(3). As Stebbins notes, many of Baz's videos include significant portions of Stebbins's videos for which Baz offers no comment or criticism. *See, e.g.*, FAC ¶ 65 (discussing Baz's "Civility Response" video); *id.* ¶ 71 (discussing Baz's "Elden Ring Response" video). Stebbins also plausibly alleges that Baz's use of Stebbins's complete or nearly complete videos diminished the market for Stebbins's works, because viewers interested in the topics at issue or the parties' feud could effectively see both parties' videos only by watching Baz's, with no need to watch Stebbins's videos. To the extent viewers might do so, they would deprive Stebbins of whatever monetary or reputational benefit he might receive from more people watching his videos on YouTube. *See Worldwide Church of God v. Philadelphia Church of God, Inc.*, 227 F.3d 1110, 1115 (9th Cir. 2000) (noting that a copyright owner's exclusive right to reproduction of a work "is not diminished or qualified by the fact that [the owner] does not realize monetary benefit").

Finally, the record does not reflect that Baz used Stebbins's works for "nonprofit educational purposes." 17 U.S.C. § 107(1). "The commercial nature of a use is relevant, but not dispositive" of that factor. *Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*, 598 U.S. 508, 510 (2023). Stebbins's pleadings and evidentiary submissions do not show that Baz's use was "nonprofit." YouTube allows users to monetize their videos and receive payment when other users view them, and there is no evidence in the record that Baz declined to participate in that program. Baz, of course, has not appeared and offered any evidence of his own. Because fair use

1    is an affirmative defense, the undersigned declines to presume that Baz's use was nonprofit in the

2    absence of evidence on that subject.  *See Campbell*, 510 U.S. at 590.  That factor therefore weighs

3    against fair use.  Section 107(1) also looks to "nature of[] the copier's use of an original work" and

4    "'whether *and to what extent*' the use at issue has a purpose or character different from the

5    original."  *Id.* at 509–10 (quoting *Campbell*, 510 U.S. at 579) (emphasis added in *Goldsmith*).  To

6    the extent that Baz gratuitously copied the entirety or near-entirety of Stebbins's works at issue,

7    far beyond what is necessary to understand his criticism, such copying lacked any "purpose or

8    character different from the original" and thus weighs against fair use.  *See id.*

9        None of those factors alone would likely be dispositive, but considering them together, this

10   is at the very least not a case where Stebbins has "plead[ed] himself out of court" with allegations

11   of obvious fair use of his videos and songs.  *Cf. Pierson*, 2019 WL 8064255, at *3 (quoting

12   *Weisbuch v. County of Los Angeles*, 119 F.3d 778, 783 n.1 (9th Cir. 1997)).  Taking into account

13   Baz's failure to appear and assert any defense, the undersigned does not recommend finding Baz's

14   reproduction of those works to be fair use.

15       Baz's use of Stebbins's channel icon in Baz's "Civility Response" video is a different

16   story.  That image appears only briefly in Baz's video, in screenshots of textual comments by

17   Stebbins that Baz criticized in the video.  Stebbins does not dispute that Baz's display of those

18   comments is fair use.  *See* FAC ¶ 66.  The icon makes up only small portions of the screenshots

19   and thus is displayed in relatively low resolution.  *See Kelly v. Arriba Soft Corp.*, 336 F.3d 811,

20   822 (9th Cir. 2003) (finding that a search engine's use of low-resolution thumbnail images was

21   fair use).  It appears exactly as it does on YouTube's website: to identify Stebbins's account as the

22   source of the comment, in the same manner that Stebbins intended it to.  It is difficult to conceive

23   of any way that Baz's inclusion of the icon in conjunction with Stebbins's comments could affect

24   any market value of the icon.  This does not resemble the sort of gratuitous copying of Stebbins's

25   videos addressed above.  Though it would have been *possible* for Baz to redact or crop out the

26   icon, *see* FAC ¶ 67, Stebbins cites no authority suggesting that the Copyright Act requires such

27   granular redaction of an otherwise fair-use reproduction of a subject of criticism.

28       Baz's use of Stebbins's channel icon differs from Baz's copying of Stebbins's videos

United States District Court
Northern District of California

15

addressed above, where the undersigned affords significant weight to Baz's overinclusive copying of portions of those videos that are not relevant to his criticism. For the videos, Baz already needed to choose which portions he would copy to his own videos and where to intersperse his commentary, so tailoring those clips to what is relevant to his commentary would not have involved adding an entirely new task to Baz's production in the same way as redacting the channel icon from screenshots. Baz's use of Stebbins's videos also displaced the potential market for them in a manner that his use of Stebbins's channel icon did not. Perhaps most significantly, the extent to which Baz's videos feature gratuitous portions of Stebbins's videos is both qualitatively and quantitatively far greater than Baz's brief display of thumbnail images of Stebbins's icon in two screenshots of Stebbins's comments. Thus, even though Stebbins argues in both instances that Baz used more of Stebbins's material than he needed, Baz's use of the channel icon in contrast to his use of video warrant different outcomes.

Accordingly, the undersigned finds that the *Eitel* factors looking to the merits of Stebbins's claim and the sufficiency of his complaint weigh in favor of default judgment to the extent he claims infringement of his copyright to the songs and videos at issue. The undersigned finds that those factors weigh against default judgment to the extent Stebbins claims infringement of his channel icon image, because it is apparent from Stebbins's pleading and the evidence he has submitted that Baz's reproduction of that image was fair use. The undersigned recommends that the Motion be DENIED as to that theory.

### E.    Remedies

#### 1.    Statutory Damages

Under 17 U.S.C. § 504(a), a plaintiff who prevails on a copyright infringement claim generally may recover either: (1) the plaintiff's actual damages, plus "any additional profits of the infringer"; or (2) statutory damages based on the number of works infringed. 17 U.S.C. § 504(a); *see id.* § 504(c)(1).

Stebbins seeks the maximum available value of statutory damages, which he contends is $3,150,000. ECF No. 37-9 at 5. In the undersigned's view, that sum is grossly excessive for the conduct at issue. As a matter of law, Stebbins also is not entitled to statutory damages for most of

United States District Court
Northern District of California

the works at issue.

Statutory damages are usually calculated as "a sum of not less than $750 or more than $30,000 [per infringed work] as the court considers just." *Id.* § 504(c)(1).  If the copyright owner proves that infringement was willful, "the court in its discretion may increase the award of statutory damages to a sum of not more than $150,000." *Id.* § 504(c)(2).  On the other hand, if the infringer proves that he or she "was not aware and had no reason to believe that his or her acts constituted an infringement of copyright, the court in its discretion may reduce the award of statutory damages to a sum of not less than $200." *Id.*

But the right to recover statutory damages has limitations.  A provision of the Copyright Act entitled "Registration as prerequisite to certain remedies for infringement" provides in relevant part:

> no award of statutory damages or of attorney's fees, as provided by sections 504 and 505, shall be made for—
>
> (1) any infringement of copyright in an unpublished work commenced before the effective date of its registration; or
>
> (2) any infringement of copyright commenced after first publication of the work and before the effective date of its registration, unless such registration is made within three months after the first publication of the work.

17 U.S.C. § 412.

Stebbins's Motion references arguments in his First Amended Complaint as to why he should be entitled to statutory damages for all of the infringed works, even though many of them were not registered until well after Baz's infringement.  ECF No. 37-9, ¶ 76 (citing FAC ¶¶ 153–56).  In the First Amended Complaint, Stebbins argues that the videos have never been published, so any registration would occur "within three months after the first publication."  FAC ¶¶ 155–56; *see also id.* ¶¶ 39–43 (presenting in greater detail Stebbins's position that his works are unpublished).  That analysis overlooks paragraph (1) of the statute, which specifically governs infringement of "unpublished work[s]," and prohibits statutory damages for such infringement if "commenced before the effective date of its registration."  17 U.S.C. § 412(1).  Accepting

Stebbins's premise that his videos are "at least officially, unpublished," FAC ¶ 155,[18] Stebbins therefore cannot recover statutory damages for infringement of those videos that occurred before Stebbins registered copyright.

Though Stebbins has registered most of his videos at issue, he does not allege or offer evidence that he did so before Baz infringed them.  Stebbins provides copyright registration numbers for each of his videos except the Second Stormcloaks Video, and the undersigned takes judicial notice of U.S. Copyright Office public records indicating that each registration issued after the infringement Stebbins alleges.

- The copyright registration number for Stebbins's "First Racist Video" is PAu004209058.  FAC ¶ 9.  Copyright Office records indicate that registration is dated January 4, 2024.  U.S. Copyright Office, Registration record PAu004209058, https://publicrecords.copyright.gov/detailed-record/voyager_36002626 [https://perma.cc/TL4D-YJ7J].  Stebbins alleges that Baz infringed this copyright in three videos posted March 4, March 31, and April 20, 2019, several years before Stebbins registered his copyright.  FAC ¶¶ 53–55.

- Stebbins's "First Stormcloaks Video" is part of the same January 4, 2024 group registration as the "First Racist Video" above.  *See* FAC ¶ 13.  Stebbins alleges that Baz infringed this copyright in four videos posted January 16 through 20, 2020— again, years before Stebbins registered his copyright.  FAC ¶¶ 60–62.

- The copyright registration number of Stebbins's "Ducking Video" is PAu004190174.  *Id.* ¶ 15.  Copyright Office records indicate that registration is dated July 20, 2023.  U.S. Copyright Office, Registration record PAu004190174, https://publicrecords.copyright.gov/detailed-record/voyager_35245307

---

[18] The undersigned finds that, by taking this position, Stebbins has waived any potential argument that the videos are published works subject to 17 U.S.C. § 412(2).  Stebbins also represented that the videos were unpublished, and the Copyright Office relied on that representation, to allow Stebbins to register multiple works as a group under 37 C.F.R. § 202.4(c)(1) ("All the works in the group must be unpublished . . . .").  Moreover, Stebbins appears to concede in his Motion that if the Court determined that his videos were published works, statutory damages would not be available for their infringement.  ECF No. 37-9 at 19.

United States District Court
Northern District of California

[https://perma.cc/X5TY-TVFN].  Stebbins alleges that Baz infringed this copyright through a video posted more than a year earlier on May 30, 2022.  FAC ¶¶ 73–74.

- The copyright registration number for Stebbins's "Aaron Video" is PAu004213836.  FAC ¶ 17.  Copyright Office records indicate that registration is dated February 10, 2024.  U.S. Copyright Office, Registration record PAu004213836, https://publicrecords.copyright.gov/detailed-record/voyager_36145760 [https://perma.cc/NUL6-PJPC].  Stebbins alleges that Baz infringed this copyright more than a year earlier in the same May 30, 2022 video that copied the "Ducking Video."  FAC ¶¶ 73–74.

- All of the videos in Stebbins's "Retorting Against Mean Comments" series are part of the same February 10, 2024 group registration as the "Aaron Video" above.  FAC ¶ 19.  Stebbins alleges that Baz infringed that copyright by including four of those videos in a video that Baz posted almost two years earlier, on April 3, 2022.  FAC ¶¶ 84–85.

- Stebbins's "Civility Video" is part of the same January 4, 2024 group registration as the "First Racist Video" above.  *See* FAC ¶ 23.  Stebbins alleges that Baz infringed that copyright in two videos posted almost three years earlier, on February 23 and March 24, 2021.  FAC ¶¶ 63–65.

- Baz infringed Stebbins's "Elden Ring Video" on July 14, 2022.  FAC ¶ 69.  That video is part of the same July 20, 2023 group registration as the "Ducking Video" above.  FAC ¶ 26.

For all of those videos, Stebbins only registered his copyrights after Baz's infringement commenced.  Stebbins therefore cannot recover statutory damages for infringement of those videos.[19]

---

[19] To the extent the Court might disagree with the recommendation above that Stebbins's claim for infringement of his channel icon is barred by the doctrine of fair use, Stebbins also cannot recover statutory damages for that infringement, because he only registered his copyright to the icon after Baz's alleged infringement commenced.  The copyright registration number for Stebbins's "Acerthorn Channel Icon #6" is VA0002294009.  FAC ¶ 7.  Copyright Office records indicate that registration is dated January 16, 2022.  U.S. Copyright Office, Registration record

United States District Court
Northern District of California

United States District Court
Northern District of California

1    The only works that Stebbins registered before Baz's infringement are the songs Stebbins

2 used as background music in the Second Stormcloaks Video. The copyright registration number

3 for all ten of Stebbins's songs, which he registered together as a group, is SRu001538491. FAC

4 ¶ 33. Stebbins alleges, and Copyright Office records confirm, that the date of that registration is

5 March 5, 2023. *Id.*; U.S. Copyright Office, Registration record SRu00153849,

6 https://publicrecords.copyright.gov/detailed-record/voyager_34922244 [https://perma.cc/5ZYS-

7 UGGV]. Stebbins alleges that Baz infringed those copyrights in Baz's "Second Stormcloaks

8 Response" video series. FAC ¶¶ 75–82. Stebbins does not specify when Baz posted those videos,

9 but his First Amended Complaint alleges that he published the "Second Stormcloaks Video" on

10 March 25, 2023, twenty days after the effective date of copyright registration for the songs. FAC

11 ¶ 36. Baz's "Second Stormcloaks Response" was necessarily published sometime after that video,

12 which it discusses and copies in significant part. The undersigned therefore concludes that Baz's

13 infringement of Stebbins's songs occurred after the registration of those songs, such that Stebbins

14 may recover statutory damages.

15    The amount of those damages is constrained by the number of works infringed. *See* 17

16 U.S.C. § 504(c)(1). Stebbins asserts that Baz infringed his copyright to ten songs. But for the

17 purpose of statutory damages under the Copyright Act, "all the parts of a compilation or derivative

18 work constitute one work." *Id.* The undersigned therefore considers whether that provision

19 applies to the infringement at issue.

20    The Copyright Act defines the relevant terms as follows:

21       A "compilation" is a work formed by the collection and assembling
22       of preexisting materials or of data that are selected, coordinated, or
         arranged in such a way that the resulting work as a whole constitutes
23       an original work of authorship. The term "compilation" includes
         collective works.

24       [. . .]

25

26

27 ───────────────
VA0002294009, https://publicrecords.copyright.gov/detailed-record/voyager_33775812
[https://perma.cc/2FFP-WUK8]. Stebbins alleges that Baz infringed that copyright in the "Civility
28 Response" videos that Baz posted the previous year, on February 23 and March 24, 2021. FAC
¶¶ 63, 66.

> A "derivative work" is a work based upon one or more preexisting works, such as a translation, musical arrangement, dramatization, fictionalization, motion picture version, sound recording, art reproduction, abridgment, condensation, or any other form in which a work may be recast, transformed, or adapted. A work consisting of editorial revisions, annotations, elaborations, or other modifications which, as a whole, represent an original work of authorship, is a "derivative work".

17 U.S.C. § 101.

To qualify for the exception, a compilation must be created with authorization of the copyright holder. An infringer cannot reduce liability by consolidating multiple infringed works into a compilation unilaterally. *WB Music Corp. v. RTV Commc'n Grp., Inc.*, 445 F.3d 538, 540–41 (2d Cir. 2006). Here, though, Stebbins—the copyright holder—chose to include all of the songs at issue in his Second Stormcloaks Video, which Baz then infringed.

"Although the Copyright Act states that 'all parts of a compilation . . . constitute one work,' it does not say that any work included in a compilation cannot also exist as a separate, independent work." *VHT, Inc. v. Zillow Grp., Inc.*, 69 F.4th 983, 990 (9th Cir. 2023) (citation omitted; alteration in original). The Ninth Circuit held in *VHT* that thousands of real estate photographs stored in a database could support multiple instances of statutory damages as individual works, even if the database could also be considered a compilation. On the other hand, in an unpublished case where a collection of real estate photographs *of a particular house* was reused without authorization, the Ninth Circuit characterized them as a compilation that only supported one instance of statutory damages. *Adams v. Agrusa*, 693 F. App'x 563, 564 (9th Cir. 2017).

Among other factors, courts look to whether each work "has an independent economic value and is, in itself, viable." *Columbia Pictures Television, Inc. v. Krypton Broad. of Birmingham, Inc.*, 259 F.3d 1186, 1193 (9th Cir. 2001) (citation omitted). In *VHT*, for example, the Ninth Circuit placed significant weight on the fact that the plaintiff "licensed the photos on a per-image or per-property basis, rather than licensing the database itself." 69 F.4th at 990. The manner in which works are registered—as a group or individually—is not dispositive and carries relatively little weight. *See id.* at 989. The Ninth Circuit has endorsed "common sense," in addition to the statutory text and caselaw, as relevant to whether works should be counted

individually or as a compilation for the purpose of statutory damages. *Id.* at 993.

Taking a commonsense view of the infringement at issue in the Second Stormcloaks Response, Baz only copied Stebbins's songs to the extent they were included (by Stebbins) in Stebbins's Second Stormcloaks Video. Stebbins also makes clear that the songs "were intended to be used as background music for [his] YouTube channel," FAC ¶ 31, and that they can be accessed outside of those videos only to by YouTube users who a pay a subscription fee to Stebbins's channel, *id.* ¶ 29; *see also* ECF No. 29 (moving to seal the songs on that basis). There is no suggestion that each song on its own holds independent economic value, outside of the videos where Stebbins has incorporated them or the collected works that can be accessed through a subscription. Accordingly, the undersigned concludes that Baz's infringement of the songs in the Second Stormcloaks Video is best viewed as infringement of a single compilation (or perhaps derivative work) of those songs. That conclusion is consistent with the "statutory text, caselaw, and common sense." *See VHT,* 69 F.4th at 993.

Stebbins may therefore recover statutory damages for infringement of one work. Under 17 U.S.C. § 504(c), the Court has discretion to assess damages ranging from $750 to $30,000, or up to $150,000 if the infringement was willful.[20] Regardless of whether Baz acted willfully, the undersigned recommends assessing damages of $1,500. Several circumstances weigh against imposing greater damages: Stebbins has shown no meaningful commercial value to the works at issue, this case appears to be intended in large part as another skirmish in a long-running and often petty personal feud, Baz's videos have already been removed from YouTube, and Stebbins has been found by many district courts to have abused the judicial system in support of frivolous and vexatious copyright claims. The undersigned also has no reason to doubt the veracity of Baz's assertion to YouTube that he believed some or all of his videos were fair use, even if that position was incorrect. ECF No. 37-3 at 3. The undersigned nevertheless recommends awarding somewhat greater than the minimum allowable damages on account of Baz's failure to appear and

---

[20] Baz (who has not appeared) has not demonstrated that he "was not aware and had no reason to believe that his . . . acts constituted an infringement," nor is such a conclusion apparent from the record. *See* 17 U.S.C. § 504(c)(1). The Court therefore lacks discretion to assess statutory damages as low as $200. *See id.*

offer any defense or justification for his actions, and the resulting denial of any opportunity for Stebbins to take discovery that might have supported a claim for greater actual or statutory damages. The undersigned does not intend to reward Baz's default with a more favorable outcome than he might have obtained if he had appeared and defended the case.

According to Stebbins, Baz is in the upper middle class in Brazil and works at a veterinary clinic. ECF No. 37-9 at 15–16. Stebbins asserts that Baz is therefore in a comparable position to President Donald Trump, an extremely wealthy person, who faced contempt fines in the tens of thousands of dollars in a civil case against him. *Id.* Contrary to Stebbins's arguments, the undersigned does not find Baz's purported relative financial comfort to militate in favor of any greater damages award.

The undersigned therefore recommends that the Court award statutory damages totaling $1,500.

### 2.    Actual Damages

Stebbins does not attempt to quantify actual damages caused by Baz's infringement. Instead, he argues that if the Court does not assess statutory damages, the Court can instead rely on the Eighth Circuit's decision in *Trobaugh v. Hall*, 176 F.3d 1087 (8th Cir. 1999), which found damages of $100 per day to be appropriate compensation for unconstitutional solitary confinement imposed in retaliation for the plaintiff having filed grievances regarding his treatment in prison. *See* ECF No. 37-9 at 19–20. Stebbins requests "Trobaugh Damages" totaling $800,300, consisting of $100 per day for each day that each of Baz's infringing videos was available before YouTube deactivated Baz's account. *Id.* at 20–21.

Stebbins summarizes *Trobaugh* as finding such damages appropriate where "(a) the tortuous act is considered harmful per se, (b) the exact economic value of the injury is difficult to calculate with precision, and (3) the tortuous behavior (and, therefore, the harm) was kept up perpetually over a period of multiple days." *Id.* at 19–20. The Eighth Circuit did not frame its decision in that manner, instead simply citing damages awards approved by other courts in other cases involving wrongful solitary confinement. 176 F.3d at 1088–89.

As far as the undersigned is aware, no court considering a copyright infringement claim

23

United States District Court
Northern District of California

has ever cited *Trobaugh* or applied its framework for damages.  That approach would seem to run counter to the statute's framework of statutory and compensatory damages, which reflects Congress's choice to allow statutory damages without a showing of actual loss only where a plaintiff meets conditions of registration that (as discussed above) Stebbins has not satisfied here with respect to his videos.  Even if that were not so, Stebbins's conflation of retaliatory solitary confinement in prison with Baz's use of Stebbins's YouTube videos is frivolous on its face.

In the absence of any showing of monetary loss by Stebbins or wrongful profit by Baz, the undersigned recommends that the Court decline to award Stebbins compensatory damages beyond the statutory damages addressed above, whether under the *Trobaugh* framework or otherwise.

### 3.    Declaratory Relief

Stebbins's Motion seeks declaratory judgment that Baz willfully infringed Stebbins's copyright in twenty-one works.  ECF No. 37-9 at 21–22.  "A default judgment must not differ in kind from . . . what is demanded in the pleadings."[21]  Fed. R. Civ. 54(c).  Stebbins's First Amended Complaint did not seek declaratory judgment.  *See* FAC ¶¶ 152–68.  The undersigned therefore recommends that Court decline to enter declaratory judgment, even though the undersigned finds that Baz infringed Stebbins's copyright to most of the works at issue.

### 4.    Injunctive Relief

Stebbins's Motion "ask[s] the Court to issue an injunction ordering the Baz to cease and desist his infringement of [Stebbins's] copyright."  ECF No. 37-9 at 22.  He includes no further argument as to the specific injunction he seeks or why it should be granted.  Stebbins has not carried his burden to obtain injunctive relief.

> [A] plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief. A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. The decision to grant or deny permanent

---

[21] In federal civil litigation, "pleadings" include complaints, answers, and certain similar filings that set forth parties' claims and defenses. Fed. R. Civ. P. 7(a).  Motions are not pleadings.  *See* Fed. R. Civ. P. 7(b).

1          injunctive relief is an act of equitable discretion by the district court,
           reviewable on appeal for abuse of discretion.

2    *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006) (citations omitted).

3          While the balance of hardships at least arguably favors Stebbins (as Baz has no legitimate

4    interest in infringement), it is not clear that any of the other factors do.  Stebbins has not identified

5    any irreparable injury.  YouTube has already removed, and/or Baz has deleted, the infringing

6    videos.  *See, e.g.*, ECF No. 37-9 at 20 & n.5 (noting that YouTube removed some of Baz's videos

7    based on Stebbins's copyright complaints and temporary suspended Baz's account, and that Baz

8    deleted the remaining videos at issue shortly after his account was reinstated).  Remedies are also

9    available at law.  Stebbins is eligible for statutory damages for one such video as discussed above,

10   and if Stebbins had suffered any other concrete harm from Baz's past infringement, he could have

11   sought to recover his actual damages. Finally, the public interest is not served by initiating

12   complex international enforcement efforts to enjoin infringement that has already ceased.

13         Further, "terms of [an] injunction should be clear enough to be understood by a lay person,

14   not just by lawyers and judges."  *Vasquez Perdomo v. Noem*, 148 F.4th 656, 679 (9th Cir. 2025).

15   Injunctions merely to follow the law generally fail that test, because even lawyers and judges may

16   disagree about the scope and application of the law.  *Id.* at 680.  An injunction against future

17   "infringement," without specifying what works it covers and how Baz can or cannot use them,

18   would not provide the guidance necessary to be enforceable.  That is particularly true when it is

19   not hard to imagine Baz creating similar videos criticizing Stebbins's works and incorporating

20   smaller, narrowly tailored portions of them that might be permissible as fair use.

21         To the extent Stebbins might have intended to incorporate in his Motion the request in his

22   First Amended Complaint that Baz "be made to remove all instances of [Stebbins's copyrighted

23   content from all of his social media accounts in their entirety," FAC ¶ 160, Stebbins offers no

24   evidence that any copyrighted content remains on Baz's social media accounts, nor any way for

25   the Court to determine whether such content might be fair use.  To the extent Stebbins might have

26   intended to pursue his First Amended Complaint's request that Baz "be made to hand over all of

27   his computers, smartphones, and other devices on which my copyrighted content may potentially

28   be stored, and that they be impounded and purged of all instances of my copyrighted content," *id.*

United States District Court
Northern District of California

¶ 161, Stebbins again offers no evidence that Baz has retained any such content on any device.

The undersigned therefore recommends that the Court decline to award injunctive relief.

### 5.    Publication of Decision

Stebbins also asks the Court to publish its decision in the Federal Supplement, largely to deter potential future copyright infringement on YouTube.  ECF No. 37-9 at 22.

> The distinction between published and unpublished cases is highly relevant for the decisions of many appellate courts, where a published case constitutes binding precedent while an unpublished decision might range from nonprecedential to non-citable. In the context of district court decisions, however, the distinction is generally meaningless, and often depends on classifications made by a reporting service rather than by the court itself. Excepting narrow doctrines [like] estoppel and law of the case, no district court decision binds any court (or even the issuing court) in future cases, and all are valuable to future decisions only to the extent that their reasoning might be persuasive, without regard for whether they are "published."

*Advsr, LLC v. Magisto Ltd.*, No. 19-cv-02670-JCS, 2020 WL 978610, at *8 n.2. (N.D. Cal. Feb. 28, 2020).[22]

Following this district's usual practice, the undersigned expresses no view on whether this Report, or any subsequent order on Stebbins's Motion for Default Judgment, should be published in the Federal Supplement.

## V.    CONCLUSION

For the reasons discussed above, the undersigned concludes that Baz infringed Stebbins's copyright to the songs and videos at issue, but not to Stebbins's channel icon image.  The undersigned recommends that the Court enter default judgment in favor of Stebbins and against Baz in the amount of $1,500.  The undersigned recommends that Stebbins's Motion for Default Judgment otherwise be denied.

Stebbins is directed to serve a copy of this Report on Baz via both email and postal mail, and to file a declaration that he has completed such service no later than February 26, 2026.  This case will be reassigned to a district judge for all further proceedings, including action on the

---

[22] Applying those principles, this Court is of course not *bound* by Judge Spero's discussion in *Advsr* regarding the insignificance of whether a district court decision is published, but the undersigned agrees with that discussion as persuasive and correct.

United States District Court
Northern District of California

recommendations of this Report.  Any party may file objections to the recommendations herein no later than two weeks after being served with a copy of this Report.  *See* 28 U.S.C. § 636(b)(1).

/ / /

Dated: February 19, 2026

_____
LISA J. CISNEROS
United States Magistrate Judge

United States District Court
Northern District of California