David Stebbins (pro se Plaintiff)    123 W. Ridge Ave., APT D, Harrison, AR 72601
(870) 212-4947     acerthorn@yahoo.com

UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF CALIFORNIA

DAVID STEBBINS,                                                                      PLAINTIFF

VS.                              Case 3:24-cv-00398-LJC

THIAGO CHAGAS GARCIA BAZ                                              DEFENDANTS

## RESPONSE TO DKT. 52 REPORT AND
## RECOMMENDATION OF MAGISTRATE JUDGE

Comes now, pro se Plaintiff David Stebbins, who hereby submits the following Response to the Report and Recommendation (or R&R for short) of Magistrate Judge Cisneros.

### Copyright strikes to be reinstated?

1. It is unclear exactly to what extent Magistrate Judge Cisneros has recommended that the default judgment be in my favor. She recommends that I be awarded default judgment in the amount of $1,500, which she expressly ties to Baz's infringement of the Second Stormcloaks Video. This seems to suggest that she is recommending that default judgment be denied as to the other 9 counts of infringement, yet she still finds that Baz infringed on them except for the icon. That's fifteen videos, total, that Garcia Baz posted to his YouTube channel infringing on my various copyrights. Even the icon – the one copyright where she found Baz's use to be fair – was still only used by Baz as part of his "Civility Response" videos.

2. Remember that, in this case, judgment in my favor (default or otherwise) dictates more than just whether or not I can recover damages against him. It also governs whether or not YouTube LLC will be required, as a condition of DMCA safe harbor law, to reinstate the copyright strikes that he suffered when I first issued the DMCA Takedowns, and therefore re-terminate his account accordingly.  Remember that his YouTube channel was interimly reinstated pending resolution of this case, YouTube told me that, if I "prevail" in court, the copyright strikes would be restored (see **Exhibit A**), which in turn means that Garcia Baz would again be terminated from YouTube. This is important because, if $1,500 is all I'm going to get, it may not be finan-

cially worth it to enforce the judgment abroad, which means that him getting re-banned from YouTube may be the only consequence I can enforce on him.

3. But as it stands, it's difficult to tell if the R&R, if adopted by the District Judge in its entirety, would actually qualify as me "prevailing" for purposes of reinstating his copyright strikes except for the two copyright strikes he suffered due to his 3-part Second Stormcloaks Response series. If that's the only copyright strikes that will be reinstated, that may not be enough to ensure his channel is re-banned (the only real consequence I can enforce on him). It largely depends on how YouTube interprets the judgment in this case and its own copyright strike policy.

4. To rectify this, I respectfully ask that the District Court state, in no uncertain terms, that I have indeed "prevailed" against the defendant on all counts of infringement except for the icon for purposes of reinstating the copyright strikes.

### Declaratory Judgment

5. Judge Cisneros did not recommend declaratory judgment, even though she admitted that it was warranted on the merits, simply because I did not ask for that specific relief in the First Amended Complaint, and relief in a default judgment is not normally allowed to differ in kind from that requested in the complaint.

6. Her logic, however, is only partially correct. The flaw in her logic is that I did indeed request in the FAC... for "for any other relief that the Court believes I may be entitled to." See Dkt. 8, ¶ 167.

7. This means that the Court is authorized, even on default judgment, to award literally any relief, regardless of whether or not I have specifically requested it elsewhere in the Complaint.

8. If the Court were to use that as a vehicle to award a declaratory judgment like what I requested in the Motion for Default Judgment, it would grant me the relief I requested in ¶ 4 above, no further explicit clarification necessary.

### The Second Stormcloaks Video should not be viewed as a compilation.

9. Judge Cisneros believes that the songs lack "independent economic value," and to support this, she insists that I have only ever made the songs available as background music in my free videos, and that "clean copies" (aka versions of the song that have no additional audio)

are only available to those who pay my channel a monthly subscription. That, however, does not mean that the songs have no independent economic value.

10.     By that logic, if ten separate movies from the same studio are released in their entirety on Netflix, that is all one work, and not 10 separate works. After all, they can all be accessed simultaneously with the same $7.99/month subscription, and even though they can be reused in other works by the same studio, they are still separate movies in their own right. But according to Judge Cisneros, that doesn't matter: Same studio + same subscription + same publication date = one work, full stop.

11.     Of course, when you think about it in that context, it sounds absurd, and yet, that is what Judge Cisneros has concluded.

12.     Alternatively, imagine if, in the pre-Internet era, a professional musician were to release a CD with ten new songs on it. You could only buy all ten songs together, since they were only available on that one CD. Does that mean the individual songs lack "independent economic value?" Of course not. That would be ridiculous. And yet, that is essentially what Judge Cisneros has declared here.

13.     In both of those hypothetical cases, while the author may have *initially* grouped them together under the same purchase/subscription, they still have the absolute right to release them individually at a later date if they so choose. Therefore, they all have "independent economic value," even if the authors do not tap into each of their values independently at first.

14.     The same thing applies here. I absolutely can release or sell copies of each song individually whenever I want. Just because I haven't done so yet doesn't mean that the songs don't have "independent economic value," just that I have not, at least not yet, chosen to market them independently.

15.     Contrast that with a fully serialized work, such as the Dragon Ball manga. Sure, that manga may have been originally released only one chapter per week, and the derivative anime (known as "Dragon Ball Z") was originally released only one episode per week, but nowadays, the entire series is available in its entirety on various streaming platforms[1]. The individual episodes have virtually no economic value onto themselves, despite their initial release schedule,

---

1   As of the time of this writing, that streaming platform is Crunchy Roll, but that is subject ot change.

because only by binge-watching all of them do they actually tell a complete story.

16. But with *movies*, even if those movies are sequels to one another, those movies all still tell standalone narratives, and therefore have value even in isolation.

17. Applying that logic to my songs, each of them can stand alone as independent musical pieces. In fact, I specifically commissioned each song to convey a specific emotion, depending on what kind of emotion I wanted to express at any given point in the video. For example, in my Second Stormcloak video (which Judge Cisneros argues should be the *Third* Stormcloak video, although she accepts my designations), beginning at timestamp 1:17:32, there is a stock, dramatic sound effect, followed by music owned by me that is meant to sound very aggressive, which I chose for that section because I was saying something controversial. Then, at timestamp 1:25:55, the music changes to something far calmer and more relaxing. The intent with those two choices was to convey the emotion of an aggressive climax in a movie, followed by a sense of peace during the movie's falling action and rolling credits.

18. Just on those two examples alone, you can see how my songs have value to be used independently, should I ever choose to license them as such.

19. For this reason, the District Court should reject Judge Cisneros's determination that the defendant only infringed on a single compilation, since her finding that the songs lack "independent economic value" is clearly flawed.

**Statutory damages should be greater than $1,500 per infringed work.**

20. When calculating how much statutory damages I should receive, Judge Cisneros completely ignored the majority of my arguments. She ignored entirely my arguments contained in Dkt. 37-9, ¶¶ 50-56 (which were a relevant consideration under the factor "the need to deter future infringement") and ¶¶ 68-75 (which were relevant under the factor "the circumstances of the infringement"). The District Court should consider these factors when calculating the statutory damages per work.

21. Her finding that I had been declared a vexatious litigant in the past is entirely irrelevant to calculating statutory damages. See Ryle v. Sliz, 162 Ga. App. 868, 870 (1982):

> "[E]vidence introduced... in an attempt to defend against an allegation of stubborn litigiousness would necessarily be limited to the plaintiff's conduct in the [instant]

case. A contrary holding would penalize those who are willing to enforce their rights through the courts. The fact that a plaintiff is litigious, that he sues everyone who offends him or has any disagreement with him, should not affect his right to recover what is rightly his. No man is bound to forego litigation at the expense of yielding rights apparently well-founded, *much less those which prove to be so founded in the end*.

The present case is illustrative of the danger of permitting the introduction of irrelevant evidence on this issue. Appellant was painted as a Scrooge who would sue a widow with a child. Regard-less of the merits of the proposed action against the widow, appellant is now the villain of the piece. The testimony concerning another transaction was irrelevant and prejudicial; its admission was an abuse of discretion and demands a reversal.") (emphasis added; citations & quotations omitted).

22. Here, my rights did indeed "prove to be so founded in the end," and so this precedent is especially apposite.

23. The only other factor I offered in my Motion for Default Judgment which Judge Cisneros even nominally considered was the one I provided in Dkt. 37-9, ¶¶ 61-67, where I argued that the infringement was most likely intentional. However, even then, the Magistrate Judge's findings are clearly erroneous.

24. Judge Cisneros's logic, regarding this factor, begins and ends with the finding that, as incorrect as the Defendant's belief was that his response videos were fair use, he nevertheless sincerely believed them. Therefore, she found the infringement was not intentional.

25. However, I already showed binding precedent (case law which she ignored entirely) that such a finding was not necessary to make a finding of intentional infringement. In Dkt. 37-9, ¶ 62, I provided ***binding precedent*** which showed that the infringement is considered intentional for purposes of statutory damages, as long as "the defendant's actions were the result of reckless disregard for, or willful blindness to, the copyright holder's rights." I then explained in ¶¶ 64-66 that the Defendant's actions fell squarely within that category.

26. Judge Cisneros completely ignored all of that. Therefore, the District Court should consider it when deciding whether and to what extent to adopt the R&R.

### My lack of success on YouTube should not weigh against me.

27. Lastly, Judge Cisneros claims that the fact that I haven't achieved very much success on

my channel cautions against an award of statutory damages. However, I still maintain that *the reason* for this lack of success is *specifically because* people like the Defendant and others similarly situated are consistently sabotaging my ability to earn a livable income from the channel.

28. Imagine if I were starting a traditional brick and mortar business, and while it might be slow to start, I slowly but surely build up a clientel, only for people like the Defendant to suddenly come along and sabotage my business equipment. So I sue him, not just for the cost of the equipment, but also lost income because I had to close up shop. But the defendant then argues that I wasn't making any money from the business anyway. Even though my income was small at first, it was still *growing*, and so the damages (other than for the equipment itself) should therefore be more than nominal.

29. So too should that be the case here. I was growing, slowly but steadily, for the first couple of years of my channel's existence, but then, along came a bunch of people who decided I was going to be their cyber punching bag, and I lost the traction I was getting. I therefore deserve to be compensated, not just for the income I directly lost, but also the progress and traction I would have gotten had my channel continued to grow unabated.

30. Of course, I could show charts of the kind of growth I was experiencing before the likes of Baz and his allies began smearing my name and sabotaging my ability to grow the channel through non-fair use infringements of my copyright (among other tortuous behavior like defamation). But in order for me to prove that, we'd have to move on to discovery, which would of course require the defendant to appear in the case. Judge Cisneros specifically said that his default, and subsequently, my inability to further develop the facts, weighs in favor of increased statutory damages. Therefore, that same logic should negate her other logic that my lack of proven channel success should weigh against statutory damages.

**Conclusion**

31.     Wherefore, premises considered, I respectfully pray that the Magistrate Judge's Report & Recommendation be adopted in part, subject to the changes I have requested in this objection, and to award me increased statutory damages.

So requested on this, the 5th day of March, 2026.

<i>/s/ David Stebbins</i><br>
David Stebbins (Pro se)